UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


MICHAEL L. CONE

v.                                          Case No.: 8:10-cv-1975-T-24 MAP
                                                     8:06-cr-43-T-24 MAP

UNITED STATES OF AMERICA


**ORDER**

This cause comes before the Court on Petitioner Michael L. Cone's motion to vacate, set aside, or correct an allegedly illegal sentence pursuant to 28 U.S.C. § 2255. (Civ. Doc. 20; Cr. Doc. 421). The Government opposes the motion. (Civ. Doc. 27). Petitioner filed a reply. (Civ. Doc. 30). As explained below, the motion is **DENIED**.

I.     **Background**

On October 17, 2006, a grand jury returned an indictment against Michael Cone charging him with conspiracy to violate federal bankruptcy laws, wire fraud affecting a financial institution, false statements, and two counts of bankruptcy fraud. (Cr. Doc. 30). On November 28, 2006, Attorney Eddie A. Suarez entered an appearance for Mr. Cone. (Cr. Doc. 56). On April 24, 2007, Attorney Suarez moved to withdraw as Mr. Cone's attorney citing irreconcilable differences and conflicts relating to witnesses. (Cr. Doc. 85). On June 20, 2007, the Court appointed Ronald Kurpiers to represent Mr. Cone. (Cr. Doc. 105).

Mr. Cone pled guilty to Counts One (Conspiracy to commit bankruptcy fraud) and Two (Wire fraud) of the indictment on October 5, 2007. (Cr. Docs. 174, 318). At that plea hearing, Mr. Cone was represented by his co-defendant wife's attorney, Marcelino Huerta, given that his attorney Ronald Kurpiers was unavailable. (Cr. Doc. 318, p.3). Mr. Cone waived the conflict. (Cr. Doc. 318 p.3, 5-9, 18-20). Following the first plea hearing, Mr. Cone hired James Felman to represent him, and Mr. Kurpiers withdrew. (Cr. Doc. 189).

Mr. Cone then sought to withdraw his plea to Count Two, Wire Fraud, and to enter guilty pleas to Counts Five and Six, Bankruptcy Fraud.  (Tr. Feb. 21, 2008, p.8).  After several hearings regarding the factual proffer, this Court found a sufficient factual basis for the Bankruptcy Fraud pleas, allowed Mr. Cone to withdraw his guilty plea as to Wire Fraud and accepted the plea to the two counts of Bankruptcy Fraud.  (Tr. Feb. 21, 2008; Tr. Feb. 22, 2008).

Following the second plea hearing, Mr. Felman withdrew as Mr. Cone's counsel citing irreconcilable differences.  (Cr. Doc. 231).  The Court reviewed Mr. Cone's financial affidavit, and finding Mr. Cone had the ability to hire counsel, informed Mr. Cone that he needed to hire counsel for sentencing or to choose to represent himself.  (Tr. Feb. 21, 2008, p.45).  Mr. Cone did not hire counsel, so the Court appointed Mr. Kurpiers as stand-by counsel on March 28, 2008.  (Cr. Doc. 322, pp.8-9).  On April 4, 2008, Mr. Cone requested appointment of counsel, and the Court appointed Mr. Kurpiers as counsel of record.  (Cr. Doc. 322, pp. 8-9).

On May 2, 2008, Mr. Cone was sentenced to five years' incarceration on each of the three counts, all to run consecutively, for a total sentence of 15 years followed by 36 months of supervised release.  (Cr. Doc. 273).

Mr. Cone filed this timely 28 U.S.C. § 2255 motion raising three arguments.  Mr. Cone first argues that his stand-in counsel, Marcelino Huerta, had a conflict of interest at his first plea hearing, and that his waiver of that conflict was involuntary, such that the counsel was ineffective.  (Civ. Doc. 21, pp. 3-8).  Next, Mr. Cone argues that there was no factual basis for his pleas to bankruptcy fraud at his second plea hearing and therefore the plea was in violation of his due process.  (Civ. Doc. 21, pp. 9-19).  Finally, Mr. Cone argues that he was denied effective assistance of counsel following his second plea hearing and prior to appointment of counsel for his sentencing hearing, such that he was not able to cooperate with the Government and was

unable to have his state court sentencing continued until after his federal court sentencing.[1]  (Civ. Doc. 21, pp. 19-25).

### First Plea Hearing

On October 5, 2007, Michael Cone entered pleas of guilty to: conspiracy to violate bankruptcy laws and wire fraud affecting a financial institution (Counts One and Two of the second superseding indictment).  (Cr. Docs. 174, 318).  Magistrate Judge Mark A. Pizzo conducted the change of plea hearing.  (Cr. Doc. 174).  At the hearing, Mr. Cone was represented by attorney Marcelino Huerta, III.  (Cr. Docs. 174, 318).  At the start of the hearing, Mr. Huerta stated that he was appearing on behalf of Joanne Cone, Petitioner's wife and co-defendant, as well as on behalf of Petitioner, because Petitioner's counsel, Mr. Kurpiers, had a long-scheduled mediation matter in Palm Beach and had asked Mr. Huerta to cover the hearing for Petitioner.  (Cr. Doc. 318, p.3).  Mr. Huerta informed the court that Mr. Cone consented to Mr. Huerta's covering the plea hearing for Mr. Kurpiers.  (Cr. Doc. 318, p.3).  The defendants sought to enter guilty pleas on Friday October 5, 2007, the last business day before the scheduled trial date of October 9, 2007.[2]  (Cr. Docs. 135; 318, p.7).

### Waiver of Conflict

Magistrate Judge Pizzo inquired specifically about Petitioner's waiver of counsel's conflict of interest.  (Cr. Doc. 318, pp. 5-8).  The Court inquired:

---

[1]  Mr. Cone also raised a cursory claim relating to modification of his forfeiture order and an allegation that the Court relied on improper factors in determining restitution.  (Cr. Doc. 20, p.8).  Mr. Cone did not delineate or further explain his argument in the accompanying memorandum of law.  (Cr. Doc. 21).  In any event, issues relating to forfeiture and restitution are not properly before the Court in a 28 U.S.C. § 2255 motion.  See Mamone v. United States, 559 F.3d 1209, 1211 (11th Cir. 2009) (finding a challenge to restitution not properly raised in a § 2255 motion because § 2255 motions apply to prisoners challenging their custody); Saldana v. United States, 273 Fed. App'x 842, 844 (11th Cir. 2008) (finding district court properly addressed jurisdictional forfeiture claim by stating that a challenge to forfeiture was outside the scope of a § 2255 proceeding).

[2]  Monday October 8, 2007 was Colombus Day.

THE COURT: I'm going to ask you also some questions to make sure that you are comfortable proceeding in the manner that you are, and particularly as to you, Mr. Cone, because Mr. Kurpiers as your counsel is not here, and you've elected to proceed with Mr. Huerta, who represents your wife?

MR. CONE: Yes, Your Honor.

THE COURT: You are entitled to conflict-free counsel, and so I want to ask you before we begin these proceedings have you discussed this plea agreement with Mr. Kurpiers?

MR. CONE: Yes, Your Honor.

THE COURT: And have you reviewed that plea agreement with him?

MR. CONE: No, Your Honor, I've not reviewed this plea agreement with him.

THE COURT: Okay.  How is it that you've discussed then that plea -- this plea agreement with Mr. Kurpiers if you haven't reviewed it with him?

MR. CONE: Your Honor, what happened is that he received a copy of it yesterday late afternoon, and it was faxed over, whereas I got a copy of it, and we talked on the phone on some -- some of the general points involved in the plea agreement . . . and . . . we talked about it over the telephone.  We didn't meet face to face and look at, though, Your Honor.

THE COURT: Okay.  Is there anything that you discussed -- well let me go over it. . . .  Is there anything in this particular plea agreement that you've signed that you need to discuss with Mr. Kurpiers?

MR. CONE: No, Your Honor.  I do not believe so, sir.

THE COURT: Have you discussed the subject matter of the plea agreement sufficient that you feel comfortable in proceeding in the way you are with Mr. Huerta as your counsel here today?

MR. CONE: Yes, Your Honor.

THE COURT: Do you need any additional time to review the plea agreement?

MR. CONE: No, Your Honor, I do not.

THE COURT: Is the plea agreement -- is the plea agreement that you discussed with Mr. Kurpiers essentially the same plea agreement that you've signed here today?

4

MR. CONE:          I believe we've made a couple of revisions to it today, and based on my conversations with Mr. Huerta, the changes are acceptable to me.

THE COURT:         All right.  Let the record reflect it's my understanding the case is scheduled for trial Tuesday.

MR. PORCELLI:      That's correct, Your Honor.

THE COURT:         Monday being a holiday.

MR. PORCELLI:      That is correct.

THE COURT:         And essentially, this is the last day that the plea agreement is available, is it, Mr. Porcelli?

MR. PORCELLI:      That is correct, Your Honor, and I should note for the record as well it's my understanding that Mr. Cone was receiving counsel regarding the plea as well from another lawyer who's not an attorney of record but who is a close friend of Mr. Cone's and was seeking his advice on the plea as well and has also had discussions with my office regarding the terms of the plea.  The actual document itself was provided to Mr. Kurpiers, which was my understanding who reviewed the terms with Mr. Cone.  The changes he's talking about are reflected in the written plea that's been filed with the Court, leaving open essentially the amount of forfeiture to be determined at sentencing.  Other than that, those terms that are outlined in the written plea agreement have been the terms that have been expressed from the beginning with both Mr. Kurpiers and the attorney that is not of record in this case who has counseled Mr. Cone as well.

THE COURT:         And who is that?

MR. PORCELLI:      That is A. Suarez, Your Honor.

THE COURT:         All right.

MR. HUERTA:        Your Honor, he was the attorney of record for several months.

THE COURT:         Right.  I note that.

                   . . .

THE COURT:         All right.  And I do not perceive given the nature of the plea agreements which I have reviewed that – in that they're almost essentially the same with the exception of certain matters that

|                 | pertain to Ms. Cone as opposed to Mr. Cone, I don't perceive any conflict or apparent conflict.  Do you, Mr. Huerta? |
|-----------------|-----------------------------------------------------------------|
| MR. HUERTA:     | No, Your Honor.                                                 |
| THE COURT:      | Does the Government?                                            |
| MR. PORCELLI:   | No, Your Honor.                                                 |
| THE COURT:      | All right.                                                      |

(Cr. Doc. 318, pp. 5-9).

Petitioner informed the Court that he had a college degree in business administration and was 51 years-old.  (Cr. Doc. 318 pp. 9,11).  The Court then reviewed the terms of each plea agreement.  (Cr. Doc. 318, p.13).  The Court summarized that Mr. Cone would be entering guilty pleas to Counts One and Two, charging conspiracy to commit bankruptcy fraud and wire fraud, and that Ms. Cone would be entering a plea to Count One, conspiracy to commit bankruptcy fraud.  (Cr. Doc. 318, p.13).  The Court noted that Ms. Cone's plea agreement stated that the United States did not oppose her request to receive a four-level downward departure adjustment relating to her role in the offense pursuant to Section 3B1.2 of the sentencing guidelines, and that assuming no adverse information was received, the United States would recommend to the Court that she receive a sentence at the low-end of the applicable guideline range.  (Cr. Doc. 318, p.15).  The prosecutor added that although it was not in the written plea agreement, the Government had also agreed to a low-end guideline allocution cap for Mr. Cone.   (Cr. Doc. 318, p.15).

The Court also summarized that each defendant agreed to cooperate with the Government and to testify fully and truthfully before any federal court or grand jury proceeding relating to the matters.  (Cr. Doc. 318, p.16).  The Court reviewed with Mr. Cone that if the Government decided that his cooperation was not substantial enough, that Mr. Cone would have to accept that decision the Government made about his cooperation.  (Cr. Doc. 318, p.17).

The Court reviewed the same with Ms. Cone.  (Cr. Doc. 318, p.17).  Both said they understood.  (Cr. Doc. 318, p.17).  The prosecutor interrupted and notified the Court that at that point, the Government had already told Mr. Huerta that the Government anticipated filing a motion for substantial assistance on behalf of Ms. Cone for assisting, inducing and facilitating Mr. Cone's plea.  (Cr. Doc. 318, p.18).

The Court then made an additional inquiry of Mr. Cone regarding the conflict of interest of Mr. Huerta.  (Cr. Doc. 318, pp. 18-21).

| | |
|---|---|
| THE COURT: | All right.  At the outset of these proceedings, I asked if there was any apparent conflict, and I assumed that there was none, but the fact that Ms. Cone is now cooperating against Mr. Cone or has persuaded him to plead guilty, while not necessarily creating a conflict in fact, creates a conflict in appearance, and, Mr. Cone, I want to make sure that you are perfectly comfortable in proceeding in the way you are with Mr. Huerta as your counsel. |
| | As I explained – well, let me make clear that I -- that you understand it.  You have a right to conflict-free counsel.  You are represented by Mr. Kurpiers.  I realize that because of the timing of this plea that Mr. Kurpiers was not able to be here and that the Government in effect is only holding this plea agreement out today because it necessarily needs to prepare for the trial, which is scheduled for Tuesday, yet I am not making this deadline nor is the Court part of the deadline. |
| | I want to make sure that you understand that you have the right to conflict-free counsel and advice from counsel who is not operating under any type of concern for some other client, namely your wife. Do you understand that? |
| MR. CONE: | Yes, Your Honor. |
| THE COURT: | Do you also understand that you have the right to waive any apparent conflict that Mr. Huerta has in representing you today? |
| MR. CONE: | Yes, Your Honor. |
| THE COURT: | Do you want to waive your right to conflict-free counsel for purposes of today's hearing and the entry of a plea and consent to Mr. Huerta representing you? |

7

| | |
|---|---|
| MR. CONE: | May I talk for one second, Your Honor? |
| COURT: | Sure. |
| MR. CONE: | Your Honor – I'm ready, Your Honor, and I waive any conflict. |
| THE COURT: | I'm sorry? |
| MR. CONE: | Your Honor, I waive any conflict. |
| THE COURT: | Do you feel pressured, Mr. Cone, to proceed today out of concern for your wife?  That's obviously a very -- I don't want to say it's a loaded question.  It's an understandable question, Mr. Cone, but my – my marching orders are to make sure that you are proceeding voluntarily, and I'm going to ask you some questions about this, but part of that question also applies to whether you are waiving your right to conflict-free counsel voluntarily because you feel that for your wife you have no other choice. |
| MR. CONE: | Your Honor, I waive the conflict, but I have to speak truthfully. As a husband, I am sincerely concerned about my wife, and I want to make sure that she's completely out of harm's way and can take care of my children, and I want to proceed and get this matter behind us. |

(Cr. Doc. 318, pp. 18-20).  The prosecutor then stated that as part of the negotiation, there was a specific request by Mr. Cone, that he would not enter a guilty plea unless consideration was given to Ms. Cone for her help in facilitating Mr. Cone's plea.  (Cr. Doc. 318, p.20).  That request came through Mr. Kurpiers and was considered by the Government.  (Cr. Doc. 318, pp. 20-21).

The Court then confirmed with Mr. Cone that there was no express agreement for the Government to file a downward departure motion for him, and that Mr. Cone's plea agreement stated only that the Government would consider filing such a motion.  (Cr. Doc. 318, p.21).  Mr. Cone agreed that he understood and agreed to accept whatever decision the Government made regarding his cooperation.  (Cr. Doc. 318, p.21).

Mr. Cone then stated that he was pleading guilty voluntarily after discussing the decision to plead guilty with his counsel. (Cr. Doc. 318, pp. 26-27). The Court specifically asked whether Mr. Cone had discussed the decision with Mr. Kurpiers and whether those discussions with Mr. Kurpiers caused Mr. Cone to come before the Court to plead guilty. (Cr. Doc. 318, pp. 26-27). Mr. Cone replied, "Yes, Your Honor." (Cr. Doc. 318, p.27).

The Court asked whether Mr. Cone was satisfied with the representation Mr. Kurpiers had given him in the case since he was retained. (Cr. Doc. 318, p.3). Mr. Cone said he was satisfied. (Cr. Doc. 318, p.39). The Court asked whether Mr. Cone was satisfied with the advice and representation Mr. Huerta had provided that day, and Mr. Cone said he was satisfied. (Cr. Doc. 318, p.39).

At first, Mr. Cone disagreed with much of the factual predicate for his guilty pleas, and the Court expressed concern about proceeding with the guilty pleas. (Cr. Doc. 318, p.59). Mr. Cone then asked the court to accept his plea and more specifically delineated his illegal conduct. (Cr. Doc. 318, pp. 59, 65-66). The Court then accepted petitioner's guilty pleas to Counts One and Two of the superseding indictment. (Cr. Doc. 317, pp. 70-72). The Court noted that it no longer had any misgivings in accepting the pleas and accepted the pleas as knowing and voluntary with a requisite factual basis. (Cr. Doc. pp. 72-74).

### Procedural History After the First Plea Hearing

This Court accepted Mr. Cone's guilty pleas to Counts One and Two of the superseding indictment on October 9, 2007. (Cr. Doc. 184). Mr. Cone subsequently retained James Felman as his attorney. On October 17, 2007, James Felman and Ronald Kurpiers filed a joint motion to substitute counsel with Mr. Felman's firm. (Cr. Doc. 187). On October 24, 2007, Mr. Kurpiers filed a motion to withdraw given that Mr. Felman had been retained. (Cr. Doc. 188). This Court granted Mr. Kurpiers motion to withdraw. (Cr. Doc. 189).

On January 22, 2008, the Government and Mr. Cone filed a joint motion to withdraw the guilty plea as to Count Two and to enter guilty pleas instead to Counts Five and Six, both bankruptcy fraud counts.  (Cr. Doc. 209).[3]

### Second Plea Hearing, Day One

This Court held a status conference on January 29, 2008 with Mr. Cone present to confirm that Mr. Cone wanted to withdraw his plea to Count Two and to plead guilty instead to Counts Five and Six.  (Cr. Doc. 212).  On February 11, 2008, the Government filed an Addendum to Plea Agreement which listed the elements for pleas to Counts Five and Six, bankruptcy fraud.  (Cr. Doc. 230, p.2).  The addendum also included a three-and-one-half page factual basis for the pleas.  (Cr. Doc. 230, pp. 3-7).

At the change of plea hearing on February 21, 2008, this Court confirmed that Petitioner still wanted to withdraw his plea of guilty to Count Two of the second superseding indictment and wanted to enter guilty pleas to Counts Five and Six.  (Tr. Feb. 21, 2008, p.8).  Petitioner confirmed that was his desire.  (Tr. Feb. 21, 2008, p.8).  The Court noted that absent an agreement to withdraw the plea between the parties, it might not allow the withdrawal, but given the agreement, it would proceed.  (Tr. Feb. 21, 2008, p.9).  The Court noted that it would rely on the Addendum to the Plea agreement filed February 11, 2008 for the factual basis.  (Tr. Feb. 21, 2008, p.10).

### Plea Agreement Addendum

The Addendum to Plea Agreement delineated that Cone Constructors, Inc. ("CCI") was a Florida corporation engaged in the business of road construction and that Mr. Cone was CCI's president.  (Doc. 230, p.3).  It stated that on or about July 7, 2000, CCI filed a Chapter 11 Bankruptcy Petition in Federal Bankruptcy Court in Tampa, Florida.  (Doc. 230, p.3).  In connection with the filing of that petition, Mr. Cone, in complicity with Patricia Rankin Grable, Ms. Cone, and others, willfully devised a scheme or artifice to defraud others concerning or in

---

[3]    The guilty plea to Count One remained in place.

relation to a proceeding under Title 11 of the United States Code. (Doc. 230, p.3). Specifically, Mr. Cone devised a scheme to fraudulently transfer CCI property to other persons or entities in order to fraudulently conceal the ownership and/or location of the property. (Doc. 230, p.3).

The Addendum stated that Mr. Cone used various corporate entities to further the scheme to defraud, including Doyle Mines, Inc. ("Doyle Mines"). (Doc. 230, p.3). It explained that Mr. Cone and his co-conspirators created and used fraudulent documents, including bogus articles of incorporation, fraudulent sales agreements, and fraudulent UCC-1 Financing Statements and UCC-3 Statements of Change, to accomplish the scheme to defraud others about the ownership and/or location of property. (Doc. 230, pp. 3-4).

The Addendum included some specific instances of the fraud, such as the March 14, 2004 deposition of Patricia Grable, stating that Mr. Cone aided and abetted Ms. Grable in presenting false information about nineteen property transfers from CCI. (Doc. 230, p.4). The Addendum stated that Ms. Grable testified that the transfers were legitimate and were made prior to CCI's bankruptcy petition, when Mr. Cone knew that the transfers were made after CCI's bankruptcy petition and were designed for the purpose of concealing the ownership and/or location of the property. (Doc. 230, p.4).

The Addendum further explained that Mr. Cone also aided and abetted Ms. Grable in testifying that Mr. Williamson authorized her to sign a UCC-3, releasing a lien against certain property, when that statement was false and intended to assist in executing the scheme to defraud others about the ownership and location of property. (Doc. 230, p.4). Mr. Cone also aided and abetted Ms. Grable in falsely testifying that she, as an officer with Doyle Mines, had entered into a contract with CCI about the purchase of dirt and the leasing of equipment, when that was untrue and made for the purpose of executing the scheme to defraud others about the ownership and location of property. (Doc. 230, p.5).

In addition, the Addendum discussed how Mr. Cone aided and abetted Ms. Cone's false deposition testimony of May 17, 2002, when she claimed that she and Ms. Grable were officers and shareholders of Doyle Mines since 1999, that she had loaned money to Doyle Mines to purchase equipment from CCI, and that Mr. Williamson was involved in Doyle Mines, when

those statements were false and made to further the scheme to defraud.  (Doc. 230, pp.5-6).

Finally, the factual proffer incorporated all of the overt acts listed in the superseding indictment.

(Doc. 230, p.6).

### Factual Basis Discussion at Second Plea Hearing, Day One

The Court asked Mr. Cone if he had any issues with the factual basis, and Mr. Cone

disputed many of the claims relating to the facts set forth about the March 14, 2004 and May 17,

2002 depositions, claiming that he did not know if some of those assertions were correct or

fraudulent.  (Tr. Feb. 21, 2008, pp. 14-22).  The Court stated it was not going to accept the plea

to Counts Five and Six.  (Tr. Feb. 21, 2007, p.22).

At that point, Mr. Cone told the Court that "there are some overt acts that relate to Five

and Six" with which he did not have issues.  (Tr. Feb. 21, 2008, at 22).  The Court stated that it

did not appear to the Court that Mr. Cone was accepting responsibility for the facts in the

Amendment to the Plea Agreement, and Mr. Cone asked for 24 hours to submit the overt acts

that he "completely claim[ed] responsibility for."  (Tr. Feb. 21, 2008, at 23).  At Mr. Cone's

request, the Court set the hearing over for the next day, despite "great trepidation . . . as to

whether it [would] do any good."  (Tr. Feb. 21, 2008, at 33).

### Factual Basis Discussion at Second Plea Hearing, Day Two

The following day, the Court reconvened, and Mr. Cone persisted in his desire to plead

guilty to Counts Five and Six.  (Tr. Feb. 22, 2008, at 7).  The Court then read the elements of

Bankruptcy Fraud to Mr. Cone as set out in the Addendum to the plea agreement.  (Tr. Feb. 22,

2008, at 9).  The Court explained that the elements of bankruptcy fraud included: 1) aiding and

abetting another person to devise a scheme or an artifice to defraud or aiding and abetting

another person with the intent to devise a scheme or an artifice to defraud, 2) aiding and abetting

another person to knowingly make a false or fraudulent representation, claim or promise

concerning or in relation to a proceeding under Title II of the United States Code, a bankruptcy

proceeding, 3) aiding and abetting another person to make the representation, claim or promise

for the purpose of executing or concealing the scheme or artifice to defraud or attempting to do

so, and 4) doing so willfully and with the intent to defraud.  (Tr. Feb. 22, 2008, pp.9-10).  Mr. Cone said that he understood the elements of the crime.  (Tr. Feb. 22, 2008, p.10).  The Court asked Mr. Cone whether he had discussed the elements of Counts Five and Six with his attorney, Mr. Felman.  (Tr. Feb. 22, 2008, p.11).  Mr. Cone said he had.  (Tr. Feb. 22, 2008, p.11).  The Court asked if Mr. Cone had discussed the facts with Mr. Felman that the Government alleged supported Counts Five and Six.  (Tr. Feb. 22, 2008, pp.11-12).  Mr. Cone said he had.  (Tr. Feb. 22, 2008, p.12).

Mr. Felman suggested that, given the events of the day before, it might be more expeditious to permit Mr. Cone to put his factual basis on the record before the Government did so.  (Tr. Feb. 22, 2008, p.24).  The Court noted that was not the typical way of proceeding.  (Tr. Feb. 22, 2008, p.25).  The Court asked Mr. Cone how he wished to plead to Counts Five and Six, and Mr. Cone said guilty.  (Tr. Feb. 22, 2008, p.25).  The prosecutor suggested that the Court might get a better sense of whether Mr. Cone was pleading guilty if the Government went over its proffer first.  (Tr. Feb. 22, 2008, p.26).  The Government noted that the Addendum to the Plea Agreement contained more detailed facts, and then it provided a lengthy oral proffer that included the following points:

- Mr. Cone, in conjunction with the bankruptcy proceeding, devised a scheme to defraud others, including the bankruptcy trustee and creditors.  (Tr. Feb. 22, 2008, pp.27-28).

- Mr. Cone used the entity Highway Industries to conduct fraudulent transfers.  (Tr. Feb. 22, 2008, p.28).

- Mr. Cone used the entity Highway Industries Southeast to further the conspiracy.  (Tr. Feb. 22, 2008, p.28).

- Mr. Cone used the entity Doyle Mines to further the concealment and transfer scheme.  (Tr. Feb. 22, 2008, p.29).

- Mr. Cone directed Ms. Grable to testify on March 14, 2004 at a deposition that Mr. Williamson gave her authority to consummate a transfer of property, when the assertion was false and made for the purpose of executing the scheme to defraud others about the ownership and/or location of certain property.  (Tr. Feb. 22, 2008, p.30).

- Mr. Cone asked Mr. Williamson to accompany him to the bank and to allow the use of Mr. Williamson's name as the remitter on cashier checks, creating the appearance that Mr. Williamson was the purchaser of the checks, and creating the false impression that Mr. Williamson was providing funds to CCI.  (Tr. Feb. 22, 2008, p.31).

- Mr. Cone asked Eddie Fletcher, an employee/officer of Highway Industries, to sign a UUC-1 financing statement giving Mr. Williamson a security interest in six to eight pieces of construction equipment that belonged to CCI.  Mr. Williamson did not know of the security interest.  (Tr. Feb. 22, 2008, p.32).

- One of the purchasers of the equipment that had a lien against it required a UCC-3, a release of lien statement by Mr. Williamson, so Ms. Rankin signed the release without authority from Mr. Williamson.  (Tr. Feb. 22, 2008, p.33).

- During depositions on May 14, 2002 and May 17, 2002, Ms. Cone and Ms. Grable provided false misleading testimony.  (Tr. Feb. 22, 2008, p.33).

The Court then asked Mr. Cone if he had any objections or corrections to the factual basis.  (Tr. Feb. 22, 2008, p.34).  Mr. Cone agreed that Ms. Rankin Grable made false statements at her deposition, and he stated that Ms. Rankin made the statement about getting permission to sign the UCC-3 after discussions with Mr. Cone. (Tr. Feb. 22, 2008, pp.34-35).  The Court explicitly inquired,

THE COURT:          Mr. Cone, are you admitting that Patricia Grable made a false or fraudulent statement in her March 14 deposition, and – that she was authorized by Charles Williamson to sign a UCC statement; you admit that she made that statement and that was false?

THE DEFENDANT:  That is correct.

THE COURT:          All right.  And you also admit that you directed her to falsely claim that?

THE DEFENDANT:  Correct.

THE COURT:          All right.  And you knew it was false?

THE DEFENDANT:  I knew that specifically what she stated in her deposition was false.

The Court then moved to the next topic, the assertions in the deposition that Ms. Cone and Ms. Grable were involved as officers in Doyle Mines.  (Tr. Feb. 22, 2008, p.37).  Mr. Cone said that he did not believe Ms. Grable's deposition transcript included Ms. Grable having made

such statements.  (Tr. Feb. 22, 2008, pp.37-38).  Mr. Cone continued, however, by explaining,

"But I am accepting responsibility for the other facts that were misleading, and that was . . . that

I also was involved in the decisions as to what to transfer – what equipment to transfer out of

Cone Constructors."  (Tr. Feb. 22, 2008, p.38).  The Court clarified, "[t]o fraudulently transfer

out of Cone Constructors?"  (Tr. Feb. 22, 2008, p.38).  Mr. Cone replied, "[t]hat is correct.

Some . . . equipment was transferred non-fraudulently, and others . . . because of the timing and

the money versus the times that the titles were executed . . . qualify . . . to be a fraudulent

transfer."  (Tr. Feb. 22, 2008, p.38).

The Court then inquired whether Mr. Cone agreed that Ms. Cone falsely claimed at his

direction that she loaned money to Doyle Mines.  (Tr. Feb. 22, 2008, p.38).  Mr. Cone disagreed

with that statement.  (Tr. Feb. 22, 2008, p.39).  The Court then asked Mr. Cone what the facts

were that supported his guilty plea to Count Six.  (Tr. Feb. 22, 2008, p.39).  Mr. Cone replied,

"Joanne Cone – it had to do with decisions as to what assets to transfer from Cone Constructors.

. . . [T]hat's not entirely correct. . . . [T]he decisions were left up to Pat and . . . myself regarding

the transfers of equipment."  (Tr. Feb. 22, 2008, p.39).  Mr. Cone also admitted that when Ms.

Cone testified that Mr. Williamson was going to be involved in Doyle Mines, that Mr. Cone

knew Mr. Williamson was not going to be involved in Doyle Mines.  (Tr. Feb. 22, 2008, pp.40-

41).  The Court then stated:

| | |
|---|---|
| THE COURT: | All right.  And I've still got to find -- even though you knew it, I have to find that you were involved with her misstatement.  So you do not agree that after consultation with you in an intent to defraud that she made that assertion? |
| THE DEFENDANT: | She made that assertion based on what -- what -- my comments [] that I had with her. |
| THE COURT: | And – your intent was to defraud? |
| THE DEFENDANT: | Well, our intent was to bolster our . . . litigation, which . . . I guess could be considered an act of defrauding. |
| THE COURT: | Well, that's what I'm asking you.  You're pleading guilty to aiding and abetting Joanne Cone in defrauding, so that's why I'm asking. |

THE DEFENDANT:   Yes -- yes, your Honor.  I agree with that then.

THE COURT:          So you are agreeing that she made this statement that Charles
                            Williamson – at the deposition that Charles Williamson was
                            supposed to be involved financially with herself and with Patricia
                            Rankin Grable and Doyle Mines, and she made that statement after
                            consulting with you, and it was made in an attempt to defraud?

THE DEFENDANT:   Correct.

(Tr. Feb. 22, 2008, pp.41-42).  The Court then accepted the guilty pleas to Counts Five and Six,

noting to Mr. Cone that he had "continually attempted throughout the plea process to undermine

[his] responsibility . . . and all along . . . it's been somewhat difficult for [him] to accept

responsibility.  But [he had] accepted . . . sufficient facts to substantiate a factual basis for a plea

to Counts Five and Six."  (Tr. Feb. 22, 2008, pp.42-43).

### Motion to Withdraw

On February 20, 2008, defense counsel, Mr. Felman, filed a motion to withdraw, citing

"irreconcilable differences."[4]  (Cr. Doc. 231).  Prior to the start of the plea hearing on February

21, 2011, the Court addressed the issue of the Motion to Withdraw.  (Tr. Feb. 21, 2008, p.4).

The Court noted that the motion was vague and asked whether Mr. Felman was prepared to

proceed with the plea hearing or whether Mr. Felman wanted the Court to address the motion to

withdraw prior to the plea hearing.  (Tr. Feb. 21, 2008, pp.4-5).  Mr. Felman stated that handling

the plea hearing first made sense.  (Tr. Feb. 21, 2008, p.5).  He noted that he recognized the

motion was vague and explained that the "nature of the motion and the circumstances . . . may

become clearer as we proceed through the hearing."  (Tr. Feb. 21, 2008, p.5).  The Court asked

---

[4]   This was the second defense attorney to file such a motion.  Mr. Eddie Suarez had filed a motion
to withdraw from Mr. Cone's representation citing irreconcilable differences on April 24, 2007.  (Cr. Doc.
85).  After Mr. Suarez withdrew, Mr. Cone was given ten days in which to hire counsel.  (Cr. Doc. 86).
When Mr. Cone had not hired counsel as of the May 16, 2007 status conference, the Court informed Mr.
Cone that if he did not hire counsel, the Court would appoint counsel for Mr. Cone and would charge him
attorney's fees.  (Cr. Doc. 89).  When Mr. Cone still had not hired counsel, the Court appointed Mr.
Krupiers on June 20, 2007, and assessed costs against Mr. Cone.   (Cr. Docs. 101, 107).  Mr. Cone
subsequently hired Mr. Felman, and Mr. Felman was substituted as counsel for Mr. Krupiers on October
25, 2007.  (Cr. Doc. 189).

Mr. Cone whether he had any objection to this procedure, and Mr. Cone said he did not object. (Tr. Feb. 21, 2008, p.5).

At the close of the first day of the plea hearing on February 21, 2008, after Mr. Cone was unable to admit sufficient facts to constitute a sufficient basis for a plea to Counts Five and Six, the Court again turned to the motion to withdraw. (Tr. Feb. 21, 2008, p.25). The Court asked Mr. Felman what the issues were other than the issues that had arisen in the failed attempt to withdraw the plea to Count Two and to enter pleas to Counts Five and Six. (Tr. Feb. 21, 2008, pp.25-26).

The Court explained that it preferred to have Mr. Felman stay on the case given that Mr. Cone had failed to obtain counsel before, such that the Court previously had to appoint counsel and assess costs against Mr. Cone. (Tr. Feb. 21, 2008, p.26). The Court said it would need a reason why Mr. Felman should be allowed to withdraw from the case. (Tr. Feb. 21, 2008, p.26).

Mr. Felman explained that he was mindful of his obligations to the Court and that was the reason he filed the motion. (Tr. Feb. 21, 2008, pp.26-27). Mr. Felman said that he did not practice law like this and felt it was his professional obligation to stop. (Tr. Feb. 21, 2008, p.27). The Court asked Mr. Felman whether he had the Factual Addendum for a period of time prior to the hearing that day, and Mr. Felman said he had. (Tr. Feb. 21, 2008, pp. 27-28). The Court then asked Mr. Cone if he wished to be heard, and Mr. Cone explained that he was trying to plead guilty but they had issues the day before about the facts, but that he wanted to proceed. (Tr. Feb. 21, 2008, p.30).

Following the plea hearing on February 22, 2008, after the Court accepted Mr. Cone's guilty pleas to Counts Five and Six, the Court re-addressed the pending Motion to Withdraw. (Tr. Feb. 22, 2008, p.44). The Court asked Mr. Felman whether he still wished to maintain his motion to withdraw. (Tr. Feb. 22, 2008, p.44). Mr. Felman said he did. (Tr. Feb. 22, 2008, p.44). The Court asked Mr. Cone whether he had anything to add, and Mr. Cone said he would work through whatever issues were necessary to fully cooperate with Mr. Felman. (Tr. Feb. 22, 2008, p.44). The Court stated that if Mr. Felman's Motion to Withdraw was still pending on the following Monday, it would grant it. (Tr. Feb. 22, 2008, p.44).

The Court then explained that if it allowed Mr. Felman to withdraw, Mr. Cone would be responsible for hiring his own counsel. (Tr. Feb. 22, 2008, p.45). The Court explained that it had reviewed Mr. Cone's financial affidavit and that Mr. Cone had sufficient funds to hire his own counsel.[5] (Tr. Feb. 22, 2008, p.45). The Court also noted that if Mr. Cone chose to represent himself at sentencing, the Court considered him to be competent and educated. (Tr. Feb. 22, 2008, p.45). The Court also noted that Mr. Cone had sat through a recent trial, had experience with a prior felony, and had no hesitancy in addressing the Court. (Tr. Feb. 22, 2008, p.45).

On February 25, 2008, the Court granted Mr. Felman's motion to withdraw. (Cr. Doc. 236). Mr. Cone did not subsequently hire counsel. On March 26, 2008, the Court appointed Mr. Kurpiers as stand-by counsel for Mr. Cone's sentencing on April 4, 2008. (Cr. Doc. 252). On April 3, 2008, Mr. Cone filed a motion to continue the sentencing that was scheduled for the next day, citing difficulty preparing for sentencing given his incarceration on March 24 2008[6] and Mr. Kurpiers's schedule. (Cr. Doc. 254). The Court granted the motion and set sentencing on May 1, 2008. (Cr. Doc. 256). Mr. Cone's motion to continue sentencing did not make mention of any difficulties relating to cooperating with the government or a desire to delay sentencing for that purpose. (Cr. Doc. 254). On April 4, 2008, upon Mr. Cone's request, the Court appointed Mr. Kurpiers as counsel of record. (Cr. Doc. 322, pp. 8-9).

## II.   <u>Motion to Vacate Sentence</u>

Petitioner raises three grounds in his motion to vacate. Petitioner argues: 1) he received ineffective assistance of counsel at his first plea hearing, on October 5, 2007, because his counsel had a conflict of interest; 2) the facts did not support the essential elements of bankruptcy fraud such that his pleas on February 21-22, 2008 to bankruptcy fraud were involuntary and in violation of due process; and 3) he was denied effective assistance of counsel between his

---

[5]   The Court had required Mr. Cone to provide a financial affidavit by 5:00 on February 21, 2008. (Tr. Feb. 21, 2008, p.24). The affidavit showed a sufficient ability to pay. Furthermore, Mr. Cone had been paying for Attorney Felman prior to the withdrawal request.

[6]   Mr. Cone had been incarcerated on an unrelated state court case.

second plea hearing and his sentencing hearing on May 1, 2008 when he was without counsel for a portion of that time.  The Court will address each of these arguments in turn.

### A.      Conflict of Interest and Waiver of Conflict

Petitioner first argues that he received ineffective assistance of counsel at his plea hearing on October 5, 2007, because his counsel had a conflict of interest.  (Cr. Doc. 21, pp.3-6).  Petitioner further argues that his waiver of the conflict of interest was unknowing and involuntary.  (Cr. Doc. 21, pp.7-8).

A defendant may waive the right to conflict-free counsel.  See United States v. Rodriguez, 982 F.2d 474, 477 (11th Cir. 1993) (citing United States v. Garcia, 517 F.2d 272, 276 (5th Cir. 1975)).  A determination that a defendant waived the right to conflict-free counsel disposes of the need to evaluate the actual or potential ineffectiveness of counsel caused by the alleged conflict of interest.  Rodriguez, 982 F.2d at 477.

The determination of whether there has been an intelligent waiver of the right to counsel depends upon the facts and circumstances of the case, including the background, experience, and conduct of the accused.  See Rodriguez, 982 F.3d at 477.  A defendant's waiver must be established through clear, unequivocal, and unambiguous language.  Id.  The record needs to show: 1) that the defendant was aware of the conflict of interest, 2) that he realized the conflict could affect the defense, and 3) that he knew of the right to obtain other counsel.  Id.  Although the Court should try to elicit narrative replies, mere assent in response to a series of questions from the bench may in some cases constitute adequate waiver.  Id.

In this case, Mr. Cone was educated and familiar with the legal system.  He had a university business administration degree and prior convictions from 1999 for money laundering, for unlawful compensation for official behavior, and for making a false official statement.  (Cr. Doc. 318, p.9).  Mr. Cone was aware of the conflict, as the Court addressed it explicitly.  (Cr. Doc. 318, pp.5-9).  Mr. Cone understood that the conflict could affect his defense, because the

Court explicitly stated that Ms. Cone was cooperating against Mr. Cone.[7]  (Cr. Doc. 318, p.18).
The Court further delineated that Ms. Cone would not be asked to testify against Mr. Cone, but
that if she was asked about a family member's criminal activities on cross-examination or
rebuttal, Ms. Cone would have to answer truthfully.  (Cr. Doc. 318, p.23).  Mr. Cone knew he
had the right to obtain other counsel, because he had other counsel already assigned to him.  The
Court also told Mr. Cone that he had a right to conflict-free counsel and advice from that
counsel.  (Cr. Doc. 318, p.19).  Thus, Mr. Cone waived any conflict.

Even assuming an invalid waiver, Mr. Cone is not entitled to relief.  In the absence of a
valid waiver, this Court assesses whether there was an actual conflict, and if so, whether the
conflict adversely affected counsel's representation.  See United States v. Novation, 271 F.3d
968, 1010-11 (11th Cir. 2001).  A showing of actual conflict arises if there is a factual showing
of inconsistent interests or specific instances in the record that suggest actual impairment of
interests.  Id. at 1011-11.  If a defendant is unable to show an actual conflict, there is no Sixth
Amendment violation.  Id. at 1011.

If an actual conflict of interest existed, the question of whether the conflict had an
adverse effect requires a showing that: 1) there was a plausible alternative defense strategy or
tactic that might have been pursued, 2) the alternative strategy or tactic was reasonable under the
facts, and 3) there was a link between the actual conflict and the decision to forgo the alternative
strategy of defense, meaning the strategy was not undertaken due to the attorney's other loyalties
and interests.  See Novation, 271 F.3d at 1011.

 Mr. Cone has not shown an actual conflict.  He has not shown specific instances in the
record that suggest actual impairment of interests.  Contrary to Mr. Cone's assertions, the plea
hearing was not a plea bargaining session.  The plea bargains had already been worked out in
advance with Mr. Kurpiers and the Government.  The prosecutor explained that the written plea
agreement that was before the Court had been negotiated with Mr. Kurpiers and Mr. Suarez and

---

[7]       Mr. Cone was well aware of this as he demanded that his wife receive credit for helping to
facilitate his plea, as a condition of entering his own guilty plea.  (Cr. Doc. 318, p.20).

that, other than a change that morning relating to forfeiture, the "terms that are outlined in the written plea agreement have been the terms that have been expressed from the beginning with both Mr. Kurpiers and [Mr. Suarez]."  (Cr. Doc. 318, pp.7-8).

The Government explained that the changes to the plea agreement that morning related to leaving a forfeiture amount undetermined until the time of sentencing.  (Cr. Doc. 318, p.7). Moreover, although Mr. Cone contends he should have received credit for substantial assistance like Ms. Cone did, the facts did not support this contention.  At the point of the plea hearing, Mr. Cone had not yet earned a 5K1.1 motion or substantial assistance from the Government, whereas Ms. Cone had.[8]  Thus, Mr. Cone is not entitled to relief because there was not an actual conflict.

Even if there were an actual conflict, there was no adverse affect.  Mr. Cone's attorney negotiated the plea agreement, and the stand-in counsel participated for only one hearing at which Mr. Cone accepted the previously negotiated plea agreement.  There was no plausible alternative defense strategy that Mr. Huerta could have pursued at the plea hearing on behalf of Mr. Cone that was reasonable under these facts.

For these reasons, Mr. Cone's claim for ineffective assistance of counsel at his first plea hearing lacks merit.

### B.    Factual Basis for Pleas to Bankruptcy Fraud at Second Plea Hearing

Mr. Cone contends that there was no factual basis to support his guilty pleas to Counts Five and Six, that his counsel was ineffective in permitting him to plead to those counts, and that his due process rights were violated by the Court having accepted those pleas.  (Cr. Doc. 21, pp.9-19).  He specifically alleges that there were no facts on the record from which it could be inferred that the false statements were made for the willful intent to devise, execute or conceal a scheme or artifice to defraud anyone.  (Civ. Doc. 21, pp.12, 14).  Moreover, Mr. Cone argues that the Government and the Court misrepresented that Ms. Cone made a false statement at her

---

[8]      The Government explained at the hearing that it was already in a position to state that it anticipated filing a motion for substantial assistance on behalf of Ms. Cone, whereas the plea agreement did not make any such promises for Mr. Cone, and the Court explained to Mr. Cone that the Government would make this determination at a later date.  (Cr. Doc. 318, p.17, 18).

deposition that Mr. Williamson was supposed to be involved financially with Doyle Mines, because her deposition testimony did not state that Mr. Williamson was going to be involved financially with Doyle Mines.  (Civ. Doc. 21, pp.15-16).

Contrary to Mr. Cone's contention, there were facts on the record showing that Mr. Cone aided and abetted the making of false statements in relation to a bankruptcy proceeding with the willful intent to devise, execute, or conceal a scheme or artifice to defraud.  The prosecutor read as part of his proffer, and Mr. Cone did not dispute, that in connection with the filing of a bankruptcy proceeding, "Mr. Cone . . . devised a scheme to defraud others, including the bankruptcy trustee and creditors, in connection with that bankruptcy proceeding" by concealing and transferring the ownership of property.  (Tr. Feb. 22, 2008, p.28).  The prosecutor referred to the false and misleading testimony on pages three through six of the Addendum as part of his proffer.  (Tr. Feb. 22, 2008, p.30).

Page four of the Addendum, which Mr. Cone did not take issue with, stated that "Michael Cone was present for Ms. Grable's March 14, 2004 deposition and aided, abetted, and directed Ms. Rankin Grable to provide materially false statements during the 2004 deposition . . . [about] 19 property transfers from CCI to various other entities or persons" and that the transfers were "fraudulently designed for the purpose of concealing the ownership and/or location of the property."  (Doc. 230, p.4).  It is reasonable to infer that because the transfers were designed to mislead the bankruptcy court, that the misstatements about those transfers were also made with the willful intent to conceal that scheme to defraud the bankruptcy court.

Moreover, Mr. Cone admitted during his plea colloquy that he directed Ms. Grable to make a false statement at her March 14, 2004 deposition that she was authorized by Mr. Williamson to sign a UCC statement, when Mr. Cone knew that was false.  (Tr. Feb. 22, 2008, p.35).  It is reasonable to infer that Mr. Cone aided and abetted Ms. Grable in making a false statement at the bankruptcy deposition in order to willfully conceal the scheme to defraud.

Finally, Mr. Cone agreed at the plea hearing that he aided and abetted Ms. Cone's false testimony at a bankruptcy deposition about whether Mr. Williamson was going to be involved

with Doyle Mines in order to bolster Mr. Cone's litigation position, which Mr. Cone explicitly admitted, "could be considered an act of defrauding." (Tr. Feb. 22, 2008, p.41).

Given that there was a sufficient basis in the record on which to support the fourth element of bankruptcy fraud for both Counts Five and Six, a willful intent to defraud when aiding and abetting in the making of the misstatements, Mr. Cone's argument lacks merit. Moreover, given the sufficient factual basis, counsel was not ineffective in permitting the plea to go forward, nor was there a due process violation.

With respect to Mr. Cone's argument that the Government or the Court misrepresented that Ms. Cone made a false statement at her deposition that Mr. Williamson was supposed to be involved financially with Doyle Mines, Mr. Cone had access to Ms. Cone's deposition testimony and in fact referred to the deposition testimony on that very point in the hearing the day before when he took issue with the Government's characterization of that passage of the deposition. (Tr. Feb. 21, 2008, pp.21-22).  On February 22, 2008, however, Mr. Cone backed off of his position and he affirmatively admitted that he knew Mr. Williamson was not involved with Doyle Mines, and that he was the reason Ms. Cone made that fraudulent assertion.  (Tr. Feb. 22, 2008, pp. 42-43).

Given that there was a sufficient basis supporting the guilty pleas to bankruptcy fraud in Counts Five and Six of the superseding indictment, Mr. Cone's allegations with respect to the factual bases are meritless.

### C.    Counsel Between Second Plea Hearings and Sentencing

Mr. Cone argues that because he did not have counsel for a period of time between the second plea hearing and sentencing, he was prejudiced when his state court sentencing occurred before his federal court sentencing, increasing his criminal history points.  (Civ. Doc. 21, p.21). He further argues that without counsel, he was not able to obtain the benefit of cooperation with the Government.  (Civ. Doc. 21, pp.21-22).

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."  U.S. Const. Amend. VI.  The

Sixth Amendment right attaches at the time adversarial criminal proceedings are initiated and continues through completion of a first, non-frivolous direct appeal.  See United States v. Garey, 540 F.3d 1253, 1262-63 (11th Cir. 2008).  The right to counsel attaches at trial and at certain "critical" pretrial proceedings, where substantial rights of the accused may be affected and counsel's absence might derogate from the accused's right to a fair trial.  Lumley v. City of Dade City, Florida, 327 F.3d 1186, 1195 n.22 (11th Cir. 2003).  The right to counsel also applies to deferred sentencing proceedings.  See Mempa v. Rhay, 389 U.S. 128, 137 (1967).

A court must appoint counsel to a defendant who is unable to obtain counsel, but a court does not need to appoint counsel to defendants who can afford to pay for their own counsel.  See 18 U.S.C. § 3006A (laying out guidelines for court appointment of counsel for persons "financially unable to obtain adequate representation"); Fed. R. 44.  In fact, even defendants who are eligible for court-appointed counsel who reject court-appointed counsel or engage in behavior that creates tension between the right to counsel and the right to self-representation, can be required by the court to choose between the two alternatives, so long as the decision is made with knowledge of the options and the consequences of the choice.  United States v. Garey, 540 F.3d 1253, 1265-66 (11th Cir. 2008).

In this case, Mr. Cone's retained attorney was permitted to withdraw on February 25, 2008, following the plea hearing.  (Cr. Doc. 236).  Mr. Cone's financial affidavit showed sufficient financial resources to hire his own attorney.  (Tr. Feb. 21, 2008 p.45).  As such, the Court informed Mr. Cone of his alternatives - he could hire new counsel or he could represent himself at sentencing if that was what he wanted to do.  (Tr. Feb. 21, 2008, p.45).

On March 26, 2008, the Court appointed Mr. Kurpiers, one of Mr. Cone's prior three attorneys who was familiar with his case, as stand-by counsel for sentencing, given that Mr. Cone had not hired counsel.  (Cr. Doc. 252).  On April 4, 2008, the Court granted a motion to continue sentencing filed by Mr. Cone and it set a new sentencing date of May 1, 2008.  (Cr. Doc. 256).  Mr. Cone's motion asked for additional time to meet with Mr. Kurpiers given Mr. Kurpiers' schedule and his own incarceration, but it did not raise any issues relating to cooperation with the Government.  (Cr. Doc. 254).  On April 4, 2008, Mr. Cone asked the Court

to appoint counsel, and on the same day, the Court appointed Mr. Kurpiers as counsel of record rather than as stand-by counsel.  (Cr. Doc. 322, pp. 8-9).

As such, Mr. Cone did not have counsel representing him from February 25, 2008 until March 26, 2008, when stand-by counsel was appointed for purposes of the sentencing hearing. Mr. Cone did not have counsel of record from February 25, 2008 through April 4, 2008, when Mr. Kurpiers was appointed as counsel of record.  During this time, Mr. Cone was sentenced in his state court proceeding on March 24, 2008.  (PSR at 12).

Although Mr. Cone claims that an attorney could have delayed his state court sentencing until after the federal sentencing hearing, there is no indication in the record that there is any merit to this contention.  Mr. Cone entered his first federal court plea on the last possible business day before trial.  (Cr. Docs. 135, 318 pp. 5-8).  Mr. Cone then sought to withdraw that guilty plea and to enter different guilty pleas.  (Tr. Feb. 21, 2008, p.8).  That second plea hearing had to be re-scheduled to accommodate Mr. Cone's Tallahassee state court trial that resulted in a guilty verdict on February 6, 2008, such that the change of plea hearing in federal court occurred on February 21, 2008.  (PSR at 12, Tr. Feb. 21, 2008, p.7).  The state court sentencing was scheduled for March 24, 2008.  Mr. Cone's sentencing hearing after the change of plea in federal court was set on March 28, 2008.  (Cr. Doc. 235).

After the first failed day of the change of plea hearing, the Court told Mr. Cone explicitly that "there is, I would think, some intent or need or desire maybe on the part of your counsel to get this case concluded before you're sentenced on the case in Tallahassee."  (Tr. Feb. 21, 2008 p. 31).  Mr. Cone replied, "Yes, Your Honor, that is correct."  (Tr. Feb. 21, 2008, p.31).  The Court continued, "It would be in your best interest, but you seem to be making that as difficult as possible."  (Tr. Feb. 21, 2008, p.31).

As such, Mr. Cone was on explicit notice on February 21, 2008 that it would be in his best interest to have his federal case conclude before his state court case.  However, despite this notice, Mr. Cone did not hire another attorney after Mr. Feldman withdrew on February 25, 2008.  On this record, it is not clear whether or not Mr. Cone attempted to continue his state court sentencing and failed, but Mr. Cone was certainly aware of the issue and could have

25

addressed it in a timely fashion. Mr. Cone's counsel at sentencing on May 2, 2008 explained that the situation got bad for Mr. Cone when Mr. Cone "made the ridiculous decision to g[o] up and litigat[e] in Tallahassee, getting convicted, and then being thrown into additional categories." (Doc. 324 p.28).  Counsel continued, "[i]f he hadn't gone and tried that case, if he had turned himself in to the U.S. Marshals, the U.S. Marshals wouldn't have sent him up there.  He wouldn't have been convicted for it, and we would be sitting here today with just a charge and not a conviction, but for that decision."  (Doc. 324 p.28).  According to Mr. Cone's counsel at sentencing, therefore, the issue relating to the state court criminal history points related primarily to Mr. Cone's decision to go to Tallahassee to litigate that case in a trial, which happened in early February 2008, before Mr. Cone was without counsel in the federal case from February 25, 2008 until April 4, 2008.

With respect to Mr. Cone's claim that he could have cooperated with the Government and received a substantial assistance motion had he had counsel from February 25, 2008 through April 4, 2008, the record also belies this contention.  Mr. Cone never mentioned an effort to cooperate with the Government as a reason for his motion to continue sentencing.  (Cr. Doc. 254).  There was also a month's time between appointment of counsel of record on April 4, 2008 and sentencing on May 1, 2008, when Mr. Cone had counsel, yet neither Mr. Cone nor his counsel raised a problem with cooperation with the Court.[9]

At the sentencing hearing, which involved the presentation of disputed fact testimony, the Government informed the Court that if Mr. Cone persisted in his factual objections, the Government would seek to withdraw Mr. Cone's acceptance of responsibility and would seek consecutive sentences and would not ask for a low-end sentence.  (Cr. Doc. 322, pp. 37, 40-41).  The Court noted that Mr. Cone was contesting the loss, his role in the offense, the two-level increase for a sophisticated fraud, and the obstruction of justice two-level increase.  (Cr. Doc.

---

[9]  Mr. Kurpiers represented that he had met with Mr. Cone three times between April 4, 2008 and May 1, 2008, for two to three hours each time.  (Cr. Doc. 322, p.32).

322, p.39).  The Court noted that it was "really not quite sure what [Mr. Cone was] accepting responsibility for."  (Cr. Doc. 322, p.39).

Based on the contested sentencing hearing, it was clear that Mr. Cone had strayed far from cooperating with the Government.  He was contesting many facts of the Government's case.  Moreover, the Pre-Sentence Report stated that "[t]he applicable guidelines, Part K of Chapter 5, and U.S.S.G. § 4A1.3 have been reviewed, and there is no apparent basis for departure."  (PSR at 22).  This PSR finding was not challenged at the sentencing hearing.

As such, having made no argument at the sentencing hearing that he was in any way stymied in his efforts to cooperate, the Court does not see any merit to this contention, especially in light of the fact that Mr. Cone had an attorney at sentencing who could have made such representations had there actually been any merit to them.

## III.   Conclusion

Accordingly, it is ORDERED AND ADJUDGED that Petitioner's § 2255 motion is **DENIED**.  (Civ. Doc. 20; Cr. Doc. 421).  The Clerk is directed to enter judgment against Petitioner in the civil case and then to close that case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHERED ORDERED that Petitioner is not entitled to a certificate of appealability.  A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability ("COA").  Id.   "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  Id. at § 2253(c)(2).  To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,"  Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel 529 U.S. 473, 484 (2000)), or that "the issues

presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.  Finally, because Petitioner is not entitled to a certificate of appealability, he is no t entitled to appeal <u>in</u> <u>forma</u> <u>pauperis</u>.

**DONE AND ORDERED** at Tampa, Florida, this 28th day of June, 2012.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record
*Pro Se* Defendant

28